**THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| ASHU INNOCENT AGBOR, | CIVIL CASE NO. 26-00019 |
| Petitioner, | |
| vs. | |
| COLONEL ALAN P. BORJA, WARDEN, GUAM DEPARMTENT OF CORRECTIONS ADULT CORRECTIONAL FACILITY; FAYE D. SANCHEZ, COMMANDER, HAGATNA DETENTION FACILITY; SERGIO ALBARRAN, FIELD OFFICE DIRECTOR FOR U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT'S ("ICE") ENFORCEMENT AND REMOVAL OPERATIONS ("ERO") SAN FRANCISCO FIELD OFFICE; MARK WAYNE MULLIN, U.S. SECRETAROY OF HOMELAND SECURITY; AND TODD BLANCHE, ACTING ATTORNEY GENERAL OF THE UNITED STATES, | **ORDER GRANTING IN PART THE PETITION** |
| Respondents. | |

Before the court is Petitioner Ashu Innocent Agbor's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. *See* Pet., ECF No. 1. The court heard the matter on July 30, 2026. For the reasons stated herein, the Petition is **GRANTED IN PART.** The court hereby

orders a bond hearing before the Immigration Judge within seven (7) days of this order.

## I. BACKGROUND[1]

Petitioner is a citizen of the Republic of Cameroon. Pet. at ¶ 1, ECF No. 1. He arrived on Guam on June 30, 2025. *Id.* Petitioner attempted entry through the Guam/CNMI Visa Waiver Application. *Id.* at ¶ 43. After questioning by Customs and Border Patrol Officials, Petitioner was detained the same day, June 30, 2025. *Id.* at 1, 43. Petitioner "expressed a fear of harm if he is returned to Cameroon and a desire to seek asylum in the United States." *Id.* at ¶ 43. As such, he was referred for a credible fear interview. *Id.* The asylum officers thereafter determined that Petitioner had a credible fear to return to Cameroon. *Id.* at 44.

Petitioner's Notice to Appear was then filed in the Guam Immigration Court on August 13, 2025, thereby initiating removal proceedings. *Id.* at ¶ 46. After delays in his hearing for various reasons and as discussed *infra*, the Immigration Judge granted Petitioner's application for asylum on March 19, 2026. *Id.* at ¶ 63. Respondents appealed the decision on March 30, 2026.[2] *Id.* at ¶ 1. Pending appeal, Respondents have continued to detain Petitioner.

The Petition was filed on June 10, 2026. ECF No. 1. The court issued a briefing schedule and set this matter for a hearing on July 17, 2026. ECF No. 6. However, due to Super Typhoon Bavi and post-typhoon recovery efforts, the court was closed for almost 1.5 weeks, and the briefing deadlines were automatically extended upon the court's reopening. *See* General Order 26-0021. Petitioner filed his Reply brief a day before the court was open for business and two days before the July 17, 2026 hearing. *See* Order, ECF No. 14. Accordingly, the court briefly continued the hearing date to July 30, 2026. *Id.*

## II. DISCUSSION

---

[1] Page citations are based on the CM/ECF pagination system.
[2] In the Respondent's response, they stated that the appeal was filed on April 2, 2026. Resp. at 9, ECF No. 11. However, it was clarified at the hearing that it was indeed filed on March 30, 2026.

Petitioner moves this court for an order of his immediate release as a result of Fifth Amendment violations (Claim 1). Pet. at ¶¶ 2, 105, ECF No. 1. In the alternative, Petitioner requests for a bond hearing (Claim 2). *Id.* at ¶¶ 2, 107. As a further alternative, Petitioner requests that this court find that "his continued detention without decision on his application for parole is arbitrary and capricious and in violation of the Administrative Procedure Act and ICE's own longstanding policies regarding parole from custody" and order ICE to release him from custody immediately (Claims 3-5). *Id*. at ¶¶ 2, 109-110, 112-113, 115-116. Because the court is granting Petitioner's request for a bond hearing, the court need not discuss Petitioner's Claims 3-5 (violations of Administrative Procedure Act).

Respondents oppose the release of Petitioner. Resp., ECF No. 11. They argue that this court lacks jurisdiction to consider the Petition. *Id.* Further, assuming this court has jurisdiction, Petitioner is not entitled to a bond hearing. *Id.* However, if the court finds that mandatory detention is not required, then the court should order a bond hearing. *Id.*

Respondents put their focus on the fact that Petitioner arrived on Guam "using the pretense of the Guam-CNMI Visa Waiver Program" but was in fact not eligible for that program. *Id.* at 9; Suppl., ECF No. 17. Respondents argue that this court should not ignore the "strict intentions" of the Guam-CNMI Visa Waiver Program when considering the cases and arguments before it. Resp. at 9, ECF No. 11. Respondents argue that "[r]especting that program and maintaining the ability of the U.S. to detain arriving aliens, without a bond hearing while they are actively before the IJ, the BIA and the Ninth Circuit, is essential to maintaining the viability of the [Guam-CNMI Visa Waiver] program." *Id.* at 9-10. While the court appreciates the intent and purpose of the Guam-CNMI Visa Waiver Program, Respondents failed to support their position. In examining the cases dealing with mandatory detention, bond hearings, and the *Banda*

factors, courts throughout the nation did not factor into their legal analysis the type of visa program an arriving alien used in entering or attempting to enter the U.S. soil. Accordingly, while the court considered this particular argument by the Respondents, the court does not find it to be supported by law, does not find it to be particularly relevant for purposes of this court's Constitutional analysis, and finds it unpersuasive.

### A. Jurisdiction

Respondents argue that this court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and 1252(b)(9), to review Petitioner's Writ for Habeas Corpus. *See* Resp. at 10-16, ECF No. 11. Respondents would like this court to read and apply these sections in the broadest terms possible. They argue that "Petitioner seeks to challenge the government's decisions to charge him with removability and detain him, which arise 'from the decision [and] action' to commence removal proceedings against him."[3] Resp. at 10, ECF No. 11 (brackets in original). First, Petitioner is not challenging his removal proceedings. He is only challenging his prolonged detention. Second, as the Supreme Court had noted and as discussed below, expansive interpretation of the statute would lead to staggering results. The Supreme Court has held that neither 8 U.S.C. §§ 1252(g) nor 1252(b)(9) deprives the federal courts of jurisdiction.

Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The Supreme Court held that this subsection should be read narrowly so as

---

[3] Respondents rely on several cases, which are distinguishable from this case. For example, Respondent's Ex. A is a dismissal order in *Wang v. Derr, et al.*, Civ. No. 25-00231 JAO-RT (D. Hawaii. 2025). That case specifically noted that it does not involve prolonged detention, which is different from *Jennings* and from this case. In *Wang*, the Petition for Writ of Habeas Corpus was filed on the same day the petitioner was arrested and detained.

to apply only to "three discrete actions" that the Attorney General may take, namely the Attorney General's decision "to commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

Petitioner's challenge to the mandatory detention does not involve a decision to "commence proceedings," or to "adjudicate cases," or to "execute" a removal order. "[A] decision to detain is independent of an action taken to remove an alien; while the former is aimed at ensuring that the alien is not a flight risk or a danger to the community, the focus of the latter is the removal of the alien." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1176 (D. Haw. 2025). Challenging the constitutionality of detention pending appeal does not address nor implicate the "three discrete actions" by the Attorney General under 8 U.S.C. § 1252(g).

Section 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C.A. § 1252(b)(9). The Supreme Court held that the meaning of "arising from" in this subsection should not be interpreted broadly. *See Jennings v. Rodriguez*, 583 U.S. 281, 293-94 (2018). If the courts were to take an "expansive interpretation of § 1252(b)(9)," it would lead to "staggering results" preventing a detained alien to file *any* claim at all, such as a *Bivens* action or an assault claim against a guard or a fellow detainee, or even a torts claim. *Id.* at 293. "Interpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable." *Id.* The Supreme Court explained, "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case,

depriving that detainee of any meaningful chance for judicial review." *Id.* at 293.

Accordingly, neither 8 U.S.C. §§ 1252(g) nor 1252(b)(9) bars this court from reviewing Petitioner's Writ of Habeas Corpus. Petitioner is not challenging the removal proceedings, which would divest this court of jurisdiction. Rather, he is challenging the constitutionality of his prolonged detention.

### B. Bond Hearing

Respondents argue that Petitioner is not entitled to a bond hearing, because Petitioner has been properly classified as an "arriving alien" and arriving aliens require mandatory detention. *See* Resp. at 10, 16, ECF No. 11. Respondents rely on a Fifth Circuit ruling, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). In that case, it examined the statutory framework between § 1225 and § 1226, with the former requiring mandatory detention without bond and the latter allowing release on bond. *Id.* at 499.  Petitioner attempts to distinguish *Buenrostro-Mendez* in that the petitioner in that case entered without inspection, unlike Petitioner here.[4] Reply at 10, ECF No. 16. After having reviewed the relevant statutes and caselaw, the court agrees with Respondents that Petitioner is not entitled to a statutory bond hearing.

Section 1225 governs the inspection of applicants for admission, defined as an alien "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Under 8 U.S.C. § 1225(b)(2)(A), "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under § 1229a[.]" This is a mandatory detention provision that does not provide for bond or release. *Buenrostro-Mendez*, 166 F.4th at 502 ("The statute unambiguously provides for mandatory detention.").

---

[4] Petitioner also relies on *Rodriguez v. Ortega*, 2026 WL 1906557 (5th Cir. July 2, 2026), for the proposition that "the Government may detain aliens under Section 1225(b)(2)(A) for ninety days but no longer without a bond hearing." *See* Reply at 10, ECF No. 16. However, this decision was vacated for an *en banc* rehearing. *Rodriguez v. Ortega*, 2026 WL 2014647 (5th Cir. July 10, 2026).

By contrast, § 1226(a) establishes a discretionary detention scheme under which an alien may be arrested and detained pending a decision on whether the alien is to be removed, and the Attorney General may release the alien on bond of at least $1,500. 8 U.S.C. § 1226(a)(2)(A); *Buenrostro-Mendez*, 166 F.4th at 499. "Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] already in the country pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 288-89.

Petitioner does not dispute his classification as an arriving alien under 8 U.S.C. § 1225. *See* Pet. at ¶ 27. In fact, Petition alleges that the relevant detention framework is 8 U.S.C. § 1225. *Id.* Based on the facts alleged in the Petition, Petitioner is correctly classified as an arriving alien under 8 U.S.C. § 1225. Petioner, a citizen of the Republic of Cameroon, arrived on Guam and presented himself for an inspection. *Id.* at ¶ 1. At that point, he was detained. *Id.* An alien who presents himself for inspection at an airport falls squarely within the definition under 8 U.S.C. § 1225. *See Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1147 (D. Nev. 2025) ("[W]hen read in context, and harmoniously with § 1226, the Court finds the plain meaning conveyed by the text of § 1225(b) is that it applies within a specific context: at or near the border, to noncitizens 'arriving' in the U.S.—not those already present within its borders."). Petitioner is therefore subject to mandatory detention. *Id.* at 1135 ("the [Immigration and Nationality Act] imposes mandatory detention of noncitizens under 8 U.S.C. § 1225.")

Courts within the Ninth Circuit have recognized that aliens detained under § 1225 are not entitled to a bond hearing, while aliens detained under § 1226 may take advantage of greater procedural and substantive rights, including bond hearings. *E.g.*, *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1135 (D. Nev. 2025) ("Individuals detained under § 1225(b) receive no bond hearing[.]"); *Rico-Tapia*, 806 F.Supp. at 1176 (noting that 8 U.S.C. § 1225 subjects a noncitizen to mandatory detention); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1139 (D. Nev.

2025) ("the structure of § 1225(b)(2) further indicates that it authorizes mandatory detention for noncitizens entering, attempting to enter, or who have recently entered the U.S.").

### C. Violation of Due Process

While arriving aliens are not statutorily entitled to a bond hearing under § 1226, "a majority of district courts have found prolonged detention under § 1225(b) without a bond hearing can eventually give rise to due process issues" under the Fifth Amendment. *Singh v. Noem*, 823 F. Supp. 3d 1164, 1171 (S.D. Cal. 2026). Courts within the Ninth Circuit have found that the Government must provide clear and convincing evidence to justify the alien's continued detention at a bond hearing. *See e.g.*, *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1107 (W.D. Wash. 2019).

In *Banda v. McAleenan*, the Western District of Washington applied the following six-factor test: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings cause by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* at 1106.

Many courts within the Ninth Circuit followed suit, including this court. *See e.g.*, *Fu v. Borja et al.*, 1:25-cv-00048, ECF No. 71 (D. Guam April 27, 2026); *Rahmani v. Bondi*, 2026 WL 638364 (W.D. Wash. Mar. 6, 2026) (reaffirming that the *Banda* multi-factor test has become the standard in the Western District for analyzing challenges to prolonged detention under § 1225(b)); *Singh*, 823 F. Supp. 3d at 1171 (Southern District of California applying the *Banda* factors); *Soltanbakhsh v. Bondi*, 2026 WL 1513030, at *7 (D. Ariz. May 6, 2026), report and recommendation adopted, 2026 WL 1511764 (D. Ariz. May 29, 2026) (District of Arizona applying the *Banda* factors). This court will therefore analyze the issue of whether there was a violation of due process by applying the *Banda* factors.

**1. The total length of detention to date**

Petitioner has been detained for over a year since his entry to Guam on June 30, 2025. Pet. at ¶ 1, ECF No. 1.

**2. The likely duration of future detention**

Petitioner is being detained until the completion of the appeal and possibly longer, depending on the appellate ruling. The Department of Homeland Security filed an appeal on March 30, 2026. *Id.* It is unclear how long the appeal process is going to take. "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City. Det.*, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (citation omitted).

**3. The conditions of detention**

The court takes judicial notice of the Guam Department of Corrections Director testifying in a separate proceeding that the conditions at the detention facility were "inhumane." *See United States v. McLain*, 1:11-cr- 00058, ECF No. 437 (D. Guam Dec. 19, 2025). As previously testified by the director, and now, as alleged by Petitioner as well, the detention center does not have a functioning air conditioning. Pet. at ¶ 75, ECF No. 1. Petitioner also alleges that he is not receiving proper medical care and often requires the intervention of his attorney before he receives treatment and medication. *Id.* at ¶¶ 70, 72-73. Food is also often undercooked. *Id.* at ¶ 76.

Towards the conclusion of the hearing, counsel for local respondents asked the court that he be given a chance to present evidence at a later time that the detention facility has improved. Respondents have had the chance to respond to the Petition and were given two weeks to do so. *See* Order, ECF No. 6. Respondents did not at all discuss conditions of detention in their response. *See generally* Resp., ECF No. 11.  Further, Respondents were given notice of the

hearing far in advance. *See* Order, ECF No. 6 and 14. As such, they could have presented evidence at the July 30, 2026, hearing. Yet, it was only when the court indicated that it was inclined to grant in part the Petition based on the *Banda* factors that counsel made a last-ditch effort to present evidence in a future hearing.

Finally, Petitioner alleges that he is being detained alongside federal criminal detainees. *Id.* at ¶ 93. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (internal brackets and citation omitted).

**4. Delays in the removal proceedings caused by the detainee**

The Immigration Judge continued Petitioner's October 23, 2025 hearing to November 21, 2025, because the day before the October hearing, Petitioner filed his I-589 Application and the Immigration Judge and the Government needed additional time to review the filing prior to the evidentiary hearing.  Pet. at ¶¶ 52-53, ECF No. 1.

**5. Delays in the removal proceedings caused by the government**

Petitioner was detained June 30, 2025, and was not provided with a credible fear interview until a month later, July 30, 2025. *Id.* at ¶¶ 43-44. It took another two weeks for the Government to initiate Petitioner's case in the Immigration Court, on August 13, 2025. *Id.* at ¶ 46. Additionally, due to Respondents' failure to transport Petitioner to his November 21, 2025, hearing before the Immigration Judge, Petitioner's hearing was rescheduled to January 22, 2026, *id.* at ¶ 56, a two-month delay that could have been prevented had Respondents properly done their job.

While awaiting the January 2026 hearing, on December 24, 2025, the Government filed a motion to pretermit Petitioner's asylum, convention against torture, and withholding of removal claims. *Id.* at ¶ 58. The Immigration Judge set this motion for a hearing at the same time as the

January 2026 hearing. *Id.* at ¶ 60. At the January 2026 hearing, Petitioner asked that the motion be denied or in the alternative, that he be given additional time to respond and argue the motion accordingly. *Id.* at ¶ 61. The Immigration Judge granted the request and continued the hearing to March 19, 2026. *Id.* This further delay was the result of the Government's action in belatedly filing the motion.

### 6. The likelihood that the removal proceedings will result in a final order of removal

The Immigration Judge approved Petitioner's application for asylum. *Id.* at ¶ 63. The court agrees with Petitioner's argument that "this initial approval by the Immigration Judge indicates a strong likelihood that Petitioner's applications will be granted, as they have already been granted by an Immigration Judge, and a low likelihood that Petitioner will ever receive a final order of removal." *Id.* at ¶ 98.

**Weighing the factors**. Petitioner caused a one-month delay throughout this entire proceeding (*see* Factor #4). However, the rest of the delays in the immigration proceedings were caused by the Government (*see* Factor #5). Petitioner has been detained for over a year and the likely duration of his future detention appear to be indefinite at this time, at least until the appeal is completed. The conditions at the detention center, as far as this court is aware, is "inhumane" as testified to by the director of the detention center himself. In addition, Petitioner is housed in the same facility as criminal detainees. Lastly, the likelihood of the removal proceedings resulting in a final order of removal is low, since Petitioner had already been granted asylum. Based on the foregoing, majority of the *Banda* factors weigh heavily in favor for the Petitioner. Thus, Petitioner is entitled to a prompt and individualized bond hearing.

### III. CONCLUSION

Based on the foregoing reasons, the court grants in part the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

In his petition, Petitioner requests immediate release. The court DENIES Petitioner's immediate release. "The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022).

The court hereby orders that Respondents shall arrange an individualized bond hearing before an immigration judge in which the government bears the burden of establishing by clear and convincing evidence that the Petitioner is a danger to the community or a flight risk. *See Banda*, 385 F. Supp. 3d at 1107. The immigration court "should consider Petitioner's financial circumstances or alternative conditions of release" if it does determine that he is not a flight risk or a danger to the community. *See Maksim v. Annex*, 2025 WL 2879328, *6 (E.D. Cal. Oct. 9, 2025) (citation omitted). If the hearing does not occur within 7 days of this Order, the Petitioner shall be released immediately from Respondents' custody.

Respondents are ordered to timely transport Petitioner to said bond hearing. Failure to do so shall result in an Order to Show Cause before this court. Further, Respondents are ordered to file a notice of compliance within 14 days of this order. The Clerk of Court shall enter judgment in Petitioner's favor.

As to Petitioner's request for attorney's fees and costs, Petitioner shall file the appropriate motion in accordance with CVLR 54(c).

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: Jul 30, 2026**